## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| RONNIE JULES BAHAM, | |
| Plaintiff, | **CV-22-10-BU-BMM** |
| vs. | |
| XTANT MEDICAL HOLDINGS, INC., | **ORDER** |
| Defendant. | |

## INTRODUCTION

Defendant Xtant Medical Holdings, Inc. ("Xtant") has filed a Motion to Transfer Venue. (Doc. 21). Xtant asserts that the United States District for the District of Utah represents the proper venue for this action. (Doc. 22). The Court held a hearing on the matter on June 23, 2022. (Doc. 27). For the following reasons, Xtant's Motion is GRANTED.

## BACKGROUND

Plaintiff Ronnie Jules Baham ("Baham") brings this action against Xtant following an operation by Dr. Kade Huntsman on April 18, 2018. Baham had been involved in a car accident in 2017 and underwent an anterior cervical discectomy and fusion ("ACDF"). (Doc. 6 at ¶ 4). Baham continued to experience pain and

ongoing problems following her 2017 surgery. (*Id.* at ¶ 4). Baham visited Dr. Huntsman in Salt Lake City, Utah, where Dr. Huntsman recommended that Baham undergo a revisionary ACDF surgery. *Id.* at ¶ 4. Dr. Huntsman performed Baham's revisionary ACDF surgery on April 18, 2018, in Salt Lake City. (*Id.* at ¶¶ 4-6). The materials used in the surgery were manufactured, marketed, and sold by Xtant. *Id.* at ¶ 3.

Baham began to experience pain and other physical problems several months after the procedure. (*Id.* at ¶ 7). She again followed up with Dr. Huntsman in Salt Lake City on January 10, 2019. (*Id.* at ¶ 7). Dr. Huntsman determined from x-rays that one of the screws securing the spinal plate placed in Baham during the April 18, 2018, operation had broken. As a result of Xtant's allegedly faulty hardware, Baham was forced to undergo a third major neck surgery. (*Id.*)

Baham brought her initial claims in Texas state court on January 8, 2021. Xtant removed the action to the Southern District of Texas, where it was eventually dismissed for lack of personal jurisdiction. Baham refiled her case in Montana state court on January 9, 2022, and the case was removed to this Court on February 17, 2022. Xtant now argues that this Court should transfer this case to the District of Utah pursuant to 28 U.S.C. § 1404.

## ANALYSIS

A district court may transfer an action to any other district or division where it might have been brought "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The district court retains discretion to determine motions for transfer under § 1404(a) according to an "individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (internal quotation marks omitted). A determination on a change in venue contains a two-part analysis. A court first must determine whether the action could have been brought in the requested venue. See *Hillerich & Bradsby Co. v. ACE Am. Ins. Co.*, No. CV 11-75-H-DWM, 2012 WL 2359488, *1 (D. Mont. June 20, 2012). If so, a court next must determine whether the change of venue would serve the interests of justice and provide convenience for the parties and witnesses. *Id.*

## I.   Whether the District of Utah represents an appropriate venue for this action.

The Court first must determine whether the action could have been brought in the District of Utah. *Hillerich,* 2012 WL 2359488 at *1. Venue proves proper where a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(b)(2). Xtant argues that all of the events and omissions giving rise to the action occurred in Utah. (Doc. 22 at 4). Namely, Xtant offers the following facts pled in Baham's Complaint (Doc. 6) to support its position: Baham

3

was prescribed the device in Utah by a surgeon in Salt Lake City; Baham

underwent surgery that implanted the allegedly faulty device in Salt Lake City; the

breakage of the device and injury resulting from such break occurred in Utah; and

the device was removed in Utah. (Doc. 4 at ¶¶ 4-8). Furthermore, Baham asserts

that Xtant failed to warn Baham's treating physicians, located in Utah, of the risks

of the device. (Doc. 6 at ¶ 4; Doc. 12 at 5).

Baham argues that Xtant already has stipulated that Montana represents the

proper forum for this litigation. (Doc. 23 at 2). Baham cites to Xtant's briefing in a

motion to dismiss in Southern District of Texas, Houston, Texas, Case No. 4:21-

CV-501, in which Xtant argued that Texas could not establish personal jurisdiction

as Xtant did not conduct business in the state and furthermore held its principal

offices in Belgrade, Montana. *Id.* Xtant holds its principal place of business in

Montana and Xtant admittedly argued in favor of personal jurisdiction existing

within the state. These assertions alone, however, fail to prevent Xtant from

establishing Utah as a proper venue. A substantial part of the events or omissions

giving rise to Baham's claims occurred in Utah. 28 U.S.C. § 1391(b)(2). Utah

represents a proper venue for this litigation.

## II.  Whether transfer will serve the interests of justice and be more convenient for the parties and witnesses.

In addition to the language of § 1404(a), Courts look to the following factors

to determine whether transfer proves appropriate: (1) plaintiff's choice of forum;

(2) convenience of the witnesses; (3) the ability of the two forums to compel non-party witnesses to testify; (4) the respective parties' contacts with the forums; (5) the state most familiar with the governing law; (6) the congestion of the two forums; (7) the length of time the action has been pending in the transferor forum; (8) ease and access to sources of proof; and (9) whether there is a local interest in either forum. *Hillerich,* 2012 WL 2359488 at *1; *Mont. Envtl. Info. Ctr. v. Bernhardt*, CV 19-130-BLG-SPW-TJC, 2020 WL 4346604, *2 (D. Mont. July 29, 2020) (slip op.).

### 1. Plaintiff's choice of forum

Courts generally give a plaintiff's choice of forum deference. *Bernhardt*, 2020 WL 4346604 at *4. Courts give plaintiff's choice less deference, however, when the plaintiff is not a resident or citizen of the forum state. *Id.* (citing *Piper Aircraft Co. Reyno*, 454 U.S. 235, 255-256 (1981). Similarly, courts give minimal consideration to plaintiff's choice of forum when "the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter." *Id.* (quoting *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).

Baham retains no residency or citizenship in Montana. (Doc. 6 at ¶ 1). None of the pertinent facts took place in Montana. Xtant's product at issue was neither designed nor manufactured in Montana. (Doc. 22-1 at ¶ 2). The Court may give

minimal deference to Baham's choice of Montana as the forum. *Bernhardt*, 2020 WL 4346604 at *4.

### 2. Convenience of the witnesses

Baham resides in Texas. (Doc. 6 at ¶ 1). Xtant, while having offices in Montana, neither designed nor manufactured the devices in Montana or Utah. The remaining non-party witnesses reside in Utah, where Baham's healthcare providers reside and where Xtant marketed the device to those providers. The forum in Utah equally inconveniences both parties, but remains close in location to non-party witnesses. This factor favors transfer. *See Allstar Mktg. Group, LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1132 (C.D. Cal. 2009).

### 3. Ability of the two forums to compel non-party witnesses to testify

A subpoena may command a person to testify within 100 miles of where the person resides, is employed, or regularly transacts business in person. Fed. R. Civ. P. 45(c)(1). The non-party witnesses, Dr. Huntsman and any other healthcare provider, reside in Utah and fall outside the subpoena power of this Court. Utah, on the other hand, likely would retain subpoena power over the non-party witnesses. Moreover, although Xtant manufactured the device outside of Utah, Xtant marketed in Utah and sent third-party sales representatives to Utah. (Doc. 22-1 ¶¶ 2-5). This factor weighs in favor of transfer.

### 4.  The respective parties' contacts with the forums

Baham maintains no contacts with Montana. *See generally* (Doc. 6). To the contrary, Baham has undergone extensive medical care at the heart of this litigation in Utah. (*Id.* at ¶¶ 4-8). Xtant only maintains offices in Montana. Xtant neither manufactured nor designed the device in Montana. (Doc. 22-1 at ¶ 2). This factor weighs in favor of transfer.

### 5.  The state most familiar with the governing law

Montana's choice-of-law rules apply in a diversity action to determine whether the Court should transfer this action. *See Arno v. Club Med, Inc.*, 22 F. 3d 1464, 1467 (9th Cir. 1994). Montana law applies the "most significant relationship" choice of law analysis in the Restatement (Second) of Conflict of Laws. *Phillips v. General Motors Corp.*, 995 P.2d 1002, 1008 (Mont. 2000). In product liability actions, the law of the "place of injury is presumptively applicable unless another state has a more significant relationship." *Phillips*, 995 P.2d at 1009. Utah law remains the applicable law unless Montana establishes a more significant relationship.

In determining whether a state other than the place of injury retains a more significant relationship, courts look to the "contacts" listed in Restatement (Second) § 145(2) in applying the principles of Restatement (Second) § 6. *Phillips*, 995 P.2d at 1008. Section 6 includes the following principles: (a) the needs of the

interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of a particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability, and uniformity of result; and (g) ease in the determination and application of the law to be applied. Restatement (Second) of Conflict of Laws § 6 (1971). In applying these § 6 principles, courts consider the following contacts: (i) the place where the injury occurred; (ii) the place where the conduct causing the injury occurred; (iii) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and (iv) the place where the relationship, if any, between the parties is centered. *Phillips*, 995 P.2d at 1008; Restatement (Second) of Conflict of Laws § 145 (1971).

### a)   Needs of the interstate and international system

The Montana Supreme Court in *Phillips* determined that this factor stood irrelevant to the analysis of § 6 principles in conjunction with § 154 contacts as it merely "supports the application of the Restatement approach, namely the law of the state with the most significant relationship to an issue." 995 P.2d at 1009. The Court need not evaluate this principle.

### b) Policies of the interested states

Courts consider the second and third principles of § 6 "the most important factors in the analysis." *Id.* at 1009. These principles require courts to determine whether applying the law of Montana with a relevant contact would further "the purpose that the law was designed to achieve." *Id.* The § 145 contacts prove especially relevant within this principle.

### i. Place of injury

As explained above, Utah represents the place where the injury occurred. Utah law, as the place of where the injury occurred, proves presumptively applicable unless Montana maintains a more significant relationship. *Id.* The Court must determine whether applying Montana law would further the purpose of the Montana products liability statute. *Id.* Montana's products liability statute protects users and consumers from products that contain defective conditions that prove unreasonably dangerous. Mont. Code Ann. § 27-1-719(2). States employ products liability statutes to "regulate the sale of products in that state and to prevent injuries incurred by that state's residents due to defective products." *Phillips*, 995 P.2d at 1009. In other words, the facts of the case must involve a sale in Montana or an injury to a Montana resident. The facts present neither.

### ii.     Place of conduct

The place of conduct causing Baham's injury remains unclear. The device that allegedly caused Baham's injury was neither designed nor manufactured in Montana. (Doc. 22-1 at ¶ 2). The location of such design and manufacturing remains unknown at this stage. The place of manufacture "is a relatively unimportant factor" in a products liability case. *Phillips*, 995 P.2d at 1012.

### iii.     Residence of the parties

Baham currently resides is Texas and was a resident of Utah at the time of the events. (Doc. 6 at ¶ 1; Doc. 10 at ¶ 1). Baham has never been a Montana resident. Without such residency, the Montana strict products liability statute in § 27-1-719(2) fails to serve the purpose of protecting its own residents from sales within the state that it intends. *Phillips*, 995 P.2d at 1009.

### iv.     Place where the relationship, if any, is centered

No relationship appears to exist between the parties. For the § 6 factors that center around the policies of the interested states, the Court determines that the issues raised by Plaintiff fail to advance the public policy behind the Montana strict products liability statute in Mont. Code Ann. § 27-1-719(2). Montana fails to overcome initial presumption of the application of Utah law. Utah maintains the most significant relationship to the litigation under the most important § 6 principle. *Phillips*, 995 P.2d at 1009. The Utah strict products liability statute better

serves the purposes of such statute as the product was sold in Utah to Baham, a Utah resident at the time of injury.

  **c)** **Protection of Justified Expectations, Polices Underlying the Particular Field of Law, and Certainty, Predictability, Uniformity, and Ease.**

  The remaining factors in the most significant relationship analysis provide little weight in overcoming the presumption that Utah law remains applicable. Rarely do tort cases involve justified expectations as "parties act without giving thought to the legal consequences of their conduct or to the law to be applied." *Id.* at 1013. Both Montana and Utah maintain the same general policies behind the purpose for their strict products liability statutes.

  Utah retains the most significant relationship to the litigation. The substantive law of Utah must apply. Utah stands in the best position to interpret its own laws. This factor weighs in favor of transfer.

  **6.  The congestion of the two forums**

  The District of Montana had 421 filings per judge in a twelve-month period ending on March 31, 2022. *See* Administrative Office of the United States Courts, *U.S. District Courts – Judicial Caseload Profile* (March 31, 2022), https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0331.2022.pdf. The District of Utah, on the other hand, had 443. This factor remains neutral to both forums.

### 7. The length of time the action has been pending in the transferor forum

Courts consider a party's diligence when determining a motion to transfer venue. *See Bradsby*, 2012 WL 2359488 at *3. This case was removed from Montana Eighteenth Judicial District Court, Gallatin County, on February 17, 2022. (Doc. 1). No discovery had taken place and no other motions practice had taken place at the time this motion was filed. This factor weighs in favor of transfer.

### 8. Ease and access to sources of proof

Courts have described this factor as one of diminishing importance given "technological advances in document storage and retrieval." *See Bernhardt*, 2020 WL 4346604 at *4. Still, Baham's medical records reside in Utah. Similarly, Baham's physicians and health care providers reside in Utah. To the extent of this factor's relativity, it weighs in favor of transfer.

### 9. Whether there is a local interest in either forum

Utah maintains an interest in regulating the sale of products in Utah and prevent injuries caused by the sale of those products within the state. *See Phillips*, 995 P.2d at 1009. Montana, on the other hand, retains little interest given Utah's designation as the location of the sale and injury.

## ORDER

Accordingly, **IT IS ORDERED** that Xtant's Motion to Transfer Venue (Doc. 21) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court is directed to transfer this case to the United States District Court for the District of Utah.

Dated the 17th day of August, 2022.

_____
Brian Morris, Chief District Judge
United States District Court